IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Gladys Marie Kelly, | Case No. 3:05 CV 7168 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| DaimlerChrysler Corporation, | |
| Defendant. | |

### INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 38), Plaintiff's Memorandum in Opposition (Doc. No. 42) and Defendant's Reply (Doc. No. 43). The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1331.

Plaintiff Gladys Marie Kelly was initially hired by Defendant DaimlerChrysler Corporation in 1983 as a timekeeper (Compl. ¶ 1). Plaintiff was later diagnosed in 1991 with multiple sclerosis and informed Defendant of her condition (Compl. ¶ 4). Plaintiff's managers informally accommodated her medical condition by allowing her to work flexible hours (Kelly Dep. 34). Defendant terminated Plaintiff's employment in October 2003, but Plaintiff was subsequently reinstated after the intercession of Plaintiff's union under the collective bargaining agreement (Compl. ¶¶ 3-4; Answer ¶ 4). Plaintiff was reinstated after signing a document setting forth conditions for reinstatement and an acknowledgment of her misconduct in deleting a database (Kelly Dep. 264-67).

**BACKGROUND**

In August 2003, while Plaintiff was employed in Defendant's training department as a clerk, Plaintiff's supervisor, Linda Carter, announced a standard starting time for training department employees (Kelly Dep. 131). After discussion with the affected employees, Carter set 7 AM as the starting time (Carter Aff. ¶ 21). Later that month, Plaintiff informed Defendant she could not begin work at 7 AM because of her medical condition, and Carter requested medical documentation (Kelly Dep. 152). On August 12, Plaintiff's physician, Dr. Snyder, wrote a note stating Plaintiff should not begin work at 7 AM (Def. Ex. AA). Defendant's Senior Human Resource Manager, Thomas Maxon, requested additional documentation (Maxon Aff. ¶ 10; Kelly Dep. 171-72). Plaintiff admits the new start time was not scheduled to be enforced for her until late October (Kelly Dep. 256).

On August 28, Plaintiff filed an internal grievance claiming denial of an accommodation (Kelly Dep. 191). Carter denied the grievance on September 24 (Kelly Dep. 198). Additional documentation from Dr. Snyder arrived on October 17 (Def. Ex. Z), and the plant physician agreed that Plaintiff should be allowed to start work later at 8:30 AM (Maxon Aff. ¶ 11).

On September 23, while preparing for an audit of the training department database, Carter warned Plaintiff that there would be consequences if the "audit does not pass because of [Plaintiff] not entering data" and that "I [Carter] don't know what I am going to do with you, but it is not going to be pretty" (Compl. ¶ 5(e); Carter Aff. ¶ 23). Plaintiff filed a grievance regarding what she perceived as a threatening statement; the grievance was denied (Compl. ¶ 5(e); Def. Ex. FF, GG). On October 9, Plaintiff called Leslie Biddle, an IT employee for Defendant, asking how one could restore a database that has been accidentally deleted (Kelly Dep. 226-27). Concerned that Plaintiff was planning to breach database security, Biddle called Carter and reported that Plaintiff asked how

2

to access databases for which she lacked authorization (Carter Aff. ¶ 24), but Plaintiff denies asking this question (Opp. p. 4). Nevertheless, Plaintiff does not dispute Biddle called Carter expressing this concern. Carter revoked Plaintiff's access to the database but restored it the morning of October 16 (Carter Aff. ¶¶ 26, 28).

On October 16, auditors were on-site reviewing the training records database for which Plaintiff was partly responsible. As Carter and another employee, Ben Mercer, reviewed the database, it was deleted (Carter Aff. ¶ 29). Carter called Martin Bally, an IT department employee, who restored the database (Carter Aff. ¶ 29). Bally informed Carter that Plaintiff's unique user ID was used to delete the database (Carter Aff. ¶ 29). Carter placed Plaintiff on notice and sent her to the labor relations office (Carter Aff. ¶ 30). A labor relations representative, Ed Schaeffer, investigated the deletion of the database and concluded Plaintiff was responsible (Maxon Aff. Ex. A). Bally provided a sequence of screenshots showing Plaintiff's unique user ID was used to delete the database (Maxon Aff. Ex. A). Plaintiff was terminated on October 24 (Kelly Dep. 257; Maxon Aff. ¶ 14). Plaintiff was reinstated through the grievance process on November 3 and was placed on "inverse layoff," meaning she was paid 95% of her salary while awaiting placement in a new position with Defendant (Maxon Aff. ¶ 14).

On November 18, Plaintiff filed an employment discrimination charge with the Ohio Civil Rights Commission (OCRC) (Def. Ex. KK) which issued a finding of no probable cause (Def. Ex. LL). Plaintiff moved for reconsideration (Def. Ex. MM) which the Commission denied (Def. Ex. NN). In February 2004, Plaintiff accepted a bid position in the press shop with a start time of 7 AM (Kelly Dep. 16, 18). Plaintiff does not recall making a specific request for a later start time but does claim she asked for some kind of accommodation (Kelly Dep. 20-22). She made up for any tardiness

3

by using accumulated Family Medical Leave Act ("FMLA") hours (Kelly Dep. 20-22). Plaintiff received a Right to Sue letter from the Equal Employment Opportuinity Commission ("EEOC") on January 15, 2005 (Def. Ex. OO). On April 12, 2005, Plaintiff filed this Complaint alleging (1) racially hostile work environment under Title VII of the Civil Rights Act of 1964; (2) denial of a reasonable accommodation under the Americans with Disabilities Act ("ADA"); and (3) retaliation under Title VII of the ADA.

## DISCUSSION

### Summary Judgment Standard

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the record contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### Plaintiff's Claims

Plaintiff concedes in her Opposition that the claim of a racially hostile work environment is unsupported by the Record (Opp. p. 6). Therefore, the Court will consider the two remaining claims.

**Denial of Accommodation under the ADA**

Under 42 U.S.C. § 12112(a), "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Defendant, an employer, is a covered entity. 42 U.S.C. § 12111(2). Discrimination in violation of the statute includes failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5).

To establish a *prima facie* case for failure to provide a reasonable accommodation, Plaintiff must prove (1) she has a disability; (2) she is otherwise qualified for the position; and (3) Defendant refused to provide a reasonable accommodation. *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997). "Disability" in this context means "a physical or mental impairment that substantially limits one or more of the major life activities," "a record of such impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2). In her Opposition, Plaintiff appears to argue either: (1) she is actually disabled; or (2) she was regarded by Defendant as being disabled.

*A.     Actually Disabled*

The ADA defines "disability" to mean a substantial limitation on at least one "major life activity" which, in turn, is defined illustratively in the corresponding regulations as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An individual is substantially limited in these activities if he or she is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which an

5

individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(i,ii).

Defendant claims Plaintiff conceded this issue but, even assuming not, Plaintiff has failed to establish a genuine dispute of material fact. Under the ADA, disability is measured **with** reference to any medication or treatment that corrects the disability. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 488 (1999). Therefore, it is irrelevant whether Plaintiff's major life activities, including the ability to work, would be substantially impaired **without** her medication. With this medication, there is no dispute Plaintiff was able to work in her position.[1] Plaintiff admits the medication allows her to "care for herself, walk, see, hear, speak, breath [sic], learn and **work**" (Opp. p. 9) (emphasis added). The only possible limitation on Plaintiff's ability to work while under medication was the extreme drowsiness in the early morning hours created by her medication. Plaintiff claims she needs to wake up very early in order to take medication and be prepared to work, which makes difficult the start time of 7 AM.[2] The crux of her argument is then that she cannot work before 8:30 AM.

The U.S. Supreme Court, the Sixth Circuit and other federal courts hold that such a limitation does not constitute a disability under the ADA. The Supreme Court has held that a condition does not constitute a disability unless it restricts an individual from working a broad range of jobs as opposed to a particular job. *Sutton*, 527 U.S. at 492. Where a plaintiff claimed he was disabled

---

[1] Plaintiff's flare-ups (Kelly Dep. 156-57), which caused temporary absences from work, do not constitute disability under the ADA. *See Dunaway v. Ford Motor Co.*, 134 Fed. App. 872-77 (6th Cir. 2005); *Mahon v. Crowell*, 295 F.3d 585, 590-91 (6th Cir. 2002).

[2] Defendant was apparently prepared to allow Plaintiff to begin work at the later time upon receiving documentation from Plaintiff's doctor (Maxon Aff. ¶ 11).

6

because he could only sleep two to four hours a night, and alternatively because he could not work more than eight hour shifts, the Sixth Circuit held he was not "substantially limited" in his ability to work. *Boerst v. Gen. Mills Operations*, 25 Fed. App. 403, 407-08 (6th Cir. 2002). The Sixth Circuit has also noted that this limitation must be measured with respect to a class of jobs, not one particular job, citing the corresponding regulation defining "substantially limits." *Id.* at 407 ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i); *McKay v. Toyota Motor Mfg., USA, Inc.*, 110 F.3d 369, 372 (6th Cir.1997).") (internal quotation marks omitted). Likewise, a plaintiff who suffered from severe eczema and was limited to four to five hours of sleep each night was not substantially limited in the major life activities even though he claimed his condition limited the number of hours he could work each week. *Verhoff v. Time Warner Cable Inc.*, 478 F.Supp 2d 933, 936-38 (N.D. Ohio 2006). The inability to work twelve-hour shifts rather than eight-hour shifts because of ulcers, tendinitis and joint problems was also held not to be a disability. *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 599 (6th Cir. 1999). A plaintiff's inability to work late or rotating shifts has also been held not to substantially limit the ability to work. *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 645 (2d Cir. 1998); *see also Serow v. Redco Foods. Inc.*, 187 F.Supp 2d 47, 51 (N.D.N.Y. 2002) (citing *Sutton*) (holding inability to work particular shifts because of health condition did not constitute disability under ADA).

To the extent Plaintiff has demonstrated any substantial limitation, she has only demonstrated an inability to begin work at 7 AM, but Plaintiff neither argues nor presents evidence suggesting this limitation precludes her ability to work other shifts or jobs. Under the above legal authorities, Plaintiff has failed to establish she was actually disabled.

7

### B. *Regarded as Disabled*

Alternatively, Plaintiff argues Defendant regarded her as disabled, which would establish disability under the ADA. Plaintiff points to four facts to support this argument: (1) that two supervisors, Carter and Jean Hathaway, a Human Resources Manager, had relatives with multiple sclerosis who did not require accommodations, which Plaintiff alleges made them likely to believe she too would not require accommodations; (2) Defendant's knowledge of Plaintiff's 1991 diagnosis of multiple sclerosis; (3) Defendant's prior informal accommodations for a later starting time; and (4) Defendant's plant physician's determination, in October 2003, after reviewing documentation Plaintiff submitted, that Plaintiff should be allowed to start work at 8:30 AM. Plaintiff argues these facts demonstrate Defendant was either disinclined to provide accommodations or predisposed to view Plaintiff as disabled.

Defendant points to controlling legal precedent that directs this Court to conclude that the facts Plaintiff raises are immaterial in establishing that she was "regarded as disabled." The Sixth Circuit has held that an employer has not "regarded [an employee] as disabled . . . because [it] has made accommodations for [his] medical restrictions." *Plant v. Morton Int'l*, 212 F.3d 929, 938 (6th Cir. 2000). The court noted the "regarded as" prong was intended to remedy situations in which employees are subject to "myths, fears or stereotypes" because of a perceived disability. *Id.* Further, an exemption from working overtime does not constitute regarding an employee as disabled. *Linser v. Ohio Dep't of Mental Health*, 2000 WL 1529809, at *4 (6th Cir. Oct. 6, 2000).

Although some of Plaintiff's supervisors arguably did not consider multiple sclerosis to require accommodations (Compl. ¶ 18), this militates against a conclusion that Defendant regarded Plaintiff as disabled. Assuming these individuals held that view, Plaintiff has not established they

8

hold "myths, fears or stereotypes" based on a perceived disability.  Furthermore, a recorded medical diagnosis with a condition does not establish that Defendant regarded Plaintiff as disabled.  *See Toyota Motor Mfg., Ky. Inc. v. Williams*, 534 U.S. 184, 199 (2002) (holding that a medical diagnosis on its own does not necessarily establish disability).  Plaintiff does not show how knowledge of the multiple sclerosis establishes Defendant's belief that Plaintiff was disabled under the ADA.  Moreover, Defendant's prior informal accommodation of a later start time does not establish that Defendant regarded Plaintiff as disabled.  As the court held in *Plant*, the "regarded as disabled" prong was not enacted to address previous informal flexibility by an employer.  Finally, Defendant's determination in October 2003 that Plaintiff should be allowed to start work at 8:30 AM, which occurred after Plaintiff was placed on notice and ceased working in the training department, at most establishes Defendant's acknowledgment that Plaintiff could not work particular hours, not that she was substantially limited in the major life activity of working.[3]

### Retaliation under Title VII of the ADA

Title VII of the ADA prohibits an employer from discriminating against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  Plaintiff may establish a *prima facie* case of retaliation by showing that:

---

[3] Plaintiff accepted the press shop position, and its apparently rigid 7 AM start time, without formal complaint to either her employer or the OCRC (Kelly Dep. 20-22).  The Court need not decide whether this failure to make a specific request for accommodation is required under the ADA, or whether Defendant failed to provide a reasonable accommodation after it was requested, because Plaintiff has failed to establish sufficient evidence for a jury to find that she is disabled under the Act.

9

      1.      she engaged in an activity protected by Title VII;

      2.      Defendant knew of her exercise of her civil rights;

      3.      thereafter, Defendant took an employment action adverse to her; and

      4.      there was a causal connection between the protected activity and the adverse employment action.

*Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 736 (6th Cir. 2006). Once Plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. The burden then shifts back to Plaintiff to demonstrate that the proffered reason is a pretext. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).

      Defendant does not dispute the first three elements. Plaintiff filed suit under Title VII as well as internal grievances and a complaint to the OCRC, and each are protected actions; Defendant knew of Plaintiff's internal grievances before placing her on notice of termination; and Plaintiff was subsequently terminated, an adverse employment action. The Court now turns to the fourth element, a causal connection between Plaintiff's protected action and her termination.

      "A causal link requires the plaintiff to proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (citations omitted); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("Plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action.").

      Defendant argues Plaintiff has not established that a genuine issue of material fact exists with respect to causation. Plaintiff must "proffer evidence 'sufficient to raise the inference that her

10

protected activity was the likely reason for the adverse action.'" *Nguyen*, 229 F.3d at 566. To establish its *prima facie* case, "a plaintiff must provide *some* evidence beyond temporal proximity to demonstrate a retaliatory causal connection, especially where a defendant provides compelling evidence of alternative causation." *Steiner v. Henderson*, 121 Fed. App. 622, 626-27 (6th Cir. 2005) (evidence that supervisor disliked plaintiff found insufficient to show causation in summary judgment context).

Here, Plaintiff has established temporal proximity between Defendant's termination of her employment and her protected activity. Plaintiff was placed on notice within two months of her August 2003 internal grievances. However, this temporal proximity alone is insufficient in light of Defendant's well-documented and compelling explanation that its actions against Plaintiff were precipitated by Plaintiff's intentional misconduct of deleting the training records database. Defendant supports this explanation with a detailed reconstruction of Plaintiff's use of her unique system user ID to delete the database, and how Plaintiff spoke with IT personnel beforehand regarding how to restore deleted databases. Interpreting the evidence in the light most favorable to Plaintiff, and even disregarding whether Plaintiff asked IT personnel how to access databases for which she lacked authorization, Defendant's "alternate explanation" that the database deletion caused Plaintiff's termination defeats Plaintiff's claim. In response, Plaintiff offers only speculation that someone else who knew her user ID, either Carter or Mercer, may have actually committed this act. Because she has failed to demonstrate a retaliatory causal connection to her termination, Plaintiff has failed to establish a *prima facie* case.

Plaintiff further characterizes Defendant's explanation for Plaintiff's termination as possibly pretextual, but, here again, offers no evidence for this proposition beyond conjecture. Moreover, this

argument misses the mark, as the burden-shifting analysis under *Manzer v. Diamond Shamrock Chems. Co*, 29 F.3d 1078, 1083 (6th Cir. 1994), does not apply unless Plaintiff first establishes a *prima facie* case for retaliation, which Plaintiff has failed to do.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

November 14, 2008